IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD CHASE,** : | | **CIVIL ACTION** |
| Plaintiff, : | | |
| : | | |
| v. : | | |
| : | | No. 11-283 |
| **CITY OF PHILADELPHIA and PRISON** : | | |
| **HEALTH SERVICES, INC.,** : | | |
| Defendants. : | | |

**Norma L. Shapiro, J.**                                                                                          **July 12, 2011**

## MEMORANDUM

On January 21, 2011, plaintiff Ronald Chase, a pretrial detainee in the Philadelphia Prison System ("PPS"), filed a *pro se* complaint. Plaintiff alleged: (1) overcrowded prison conditions, including triple celling; (2) inadequate medical care by Prison Health Services, Inc.; and (3) denial of Kosher meals in violation of his "religious right to meals as a Muslim." Pl.'s Compl. (paper no. 3), Attached Statement of Facts, ¶ 7. Plaintiff's action was subsequently consolidated with Civil Action No. 11-3711, *In re: Prison Overcrowding Cases*. Gerald J. Williams, Esq. was appointed plaintiff's counsel and given leave to file an amended complaint.

On June 2, 2011, plaintiff wrote a letter to the court; the court received the letter on June 21, 2011. The letter stated that PPS has refused to serve Kosher meals to plaintiff, despite his requests for Kosher food for his "religious/medical diet." Pl.'s June 2, 2011 Letter at 2 (paper no. 11). The letter stated plaintiff was on a hunger strike and had lost forty-five pounds, and requested a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65 to remedy the denial of Kosher meals.

The court held a hearing on plaintiff's request for a TRO on June 28, 2011. Counsel for

1

plaintiff[1] and the City of Philadelphia ("City") each presented witnesses. At the hearing's conclusion, the court denied plaintiff's request for a temporary restraining order.

I.  Testimony at the June 28, 2011 Hearing

    A.  Plaintiff Ronald Chase

Plaintiff testified he requested Kosher meals because he is Jewish, contrary to statements in his complaint that he was Muslim. *See* Pl.'s Compl. (paper no. 3), Attached Statement of Facts, ¶ 7. Plaintiff testified that his parents raised him as Jewish, and eating Kosher food is important to him because it is the food he grew up eating. When plaintiff has not been incarcerated, he testified that he maintains a Kosher diet. On cross-examination, counsel for the City asked plaintiff what religious purpose is served by eating Kosher food; plaintiff stated that Jewish people eat Kosher food for its historical significance. When the court asked plaintiff what makes certain foods Kosher, he stated, "the preparation," but was unable to provide further explanation. When probed further on cross-examination about the Kosher preparation of meat, plaintiff stated that meat is prepared Kosher when it comes from a certain part of the animal and when it is without fat.

In addition to eating Kosher food, plaintiff testified that he had practiced the Jewish religion by attending, when not incarcerated, synagogues in Providence, Rhode Island and Smyrna, Georgia, although he could not remember the names of the synagogues nor the rabbis. He stated he observes the Jewish holidays of Hannukah, Passover, and Yom Kippur. When the court asked how he observes the holidays, he was unable to provide detail; instead, he stated he is

---

[1] By order of May 18, 2011, Gerald Williams, Esq. was appointed plaintiff's counsel. At the TRO hearing plaintiff was represented by Andrew Erba, Esq., Mr. Williams' partner.

studying the Jewish religion and is beginning to learn how to observe the holidays.

According to plaintiff, he first requested a Kosher diet in May, 2010, but the prison chaplain determined he was not entitled to Kosher meals because he did not hold a sincere religious belief requiring him to eat Kosher food. Plaintiff also testified that the chaplain told him he could not be Jewish because he is African-American, so he must be a Hebrew-Israelite instead.[2]

Plaintiff claims that a federal court had previously ordered a prison to provide him with Kosher meals. He testified that when he was previously incarcerated in a Rhode Island state institution, he filed a lawsuit challenging the prison's denial of Kosher food, and the Honorable Raymond J. Pettine, U.S. District Court for the District of Rhode Island, entered a consent decree ordering that plaintiff must receive Kosher meals. The court asked if plaintiff or counsel were able to provide documents from the Rhode Island case, but no documents were provided, so the court does not have a copy of any consent decree. However, the court has found court opinions discussing plaintiff's motions to enforce the consent decree; these opinions describe the consent decree as pertaining to "law library services and access thereto." *Chase v. Gardner*, No. 98-002, 1998 WL 939527, at *1 (D.R.I Dec. 21, 1998); *see also Chase v. Cudworth*, No. 00-217, 2000 WL 1787638, at *1 (D.R.I. Oct. 17, 2008) (stating that paragraph sixteen of the consent decree provides for additional time in the law library for prison inmates). The court also found *Chase v. Quick*, 596 F. Supp. 33 (D.R.I. 1984), in which then-District Judge Selya dismissed plaintiff's complaint for failure to state a claim. Plaintiff's complaint had alleged he was Muslim and

---

[2] The prison chaplain does not remember speaking with plaintiff in May, 2010, but does not deny that conversations may have occurred.

criticized the prison for not complying with the special diet required by his religion: "The Muslim meals are not to consist of pork but my tray and other Muslims have received pork." *Id.* at 34.

Plaintiff's letter to the court, requesting a TRO, states that he began a hunger strike on June 2, 2011. Plaintiff informed the court that he ended his hunger strike when he received notice of the TRO hearing, so he would be nourished and able to speak in court.

### B. Chaplain Phillis Taylor

Phillis Taylor is not an ordained minister, imam, or rabbi, but she has served as chaplain at the PPS for ten years. Part of her job is to determine whether inmates are entitled to special diets for religious reasons. Chaplain Taylor offered testimony on behalf of the City to explain her decision to deny plaintiff's request for a Kosher diet.

To decide if an inmate may receive a special diet for religious reasons, Chaplain Taylor must ascertain the inmate's religion. She receives this information in one of two ways: (1) from a list, prepared by prison officials, that is ordered by inmates' religions; or (2) from an inmate's requests to staff for religious services. Upon identifying a Jewish inmate, Chaplain Taylor visits the inmate to provide literature, support, prayers, and if requested, a Kosher diet. To determine if an inmate may receive a Kosher diet, Chaplain Taylor considers: (1) how much the inmate knows about why certain adherents to the Jewish religion eat only Kosher food; (2) the inmate's religious practices before and during custody; and (3) the statements of any references provided by the inmate about the inmate's religious beliefs or practices. Because inmates believe that the prison's Kosher meals contain "better" food, Chaplain Taylor testified that the prison must consistently apply its rules regarding provision of Kosher meals, or inmates may feign religious

beliefs to obtain Kosher meals.

Chaplain Taylor's first encounter with plaintiff (that Chaplain Taylor recalls)[3] occurred in June, 2011. On June 14, 2011, Chaplain Taylor was informed that plaintiff began a hunger strike because he was not receiving Kosher meals. On June 15, 2011, Chaplain Taylor visited plaintiff in the medical unit, but he refused to speak with her. Chaplain Taylor later visited plaintiff in his cell. She testified that plaintiff told her he needed a Kosher diet for medical reasons; he did not mention his religion. He also told her that he had a court order to receive Kosher food, and provided her with the contact information for his lawyer, Gerald Williams. When the chaplain spoke with the attorney on the telephone, he informed her that knew nothing about a court order requiring a Kosher diet, and that he was only representing plaintiff in an action about overcrowded prison conditions, not food. According to Chaplain Taylor, the prison had recorded plaintiff's religion as Muslim, not Jewish, and plaintiff never sent an inmate request to staff to change his religious designation. During Passover, when the rules regarding provision of Kosher diets are relaxed and inmates may more easily obtain Kosher meals, plaintiff did not request Kosher meals. For these reasons, the prison did not provide Kosher meals to plaintiff. Chaplain Taylor offered plaintiff vegetarian meals,[4] which meet some Kosher standards because they

---

[3] Chaplain Taylor acknowledges that there may have been earlier encounters with plaintiff, but she does not remember.

[4] The PPS refers to vegetarian meals as a "non-meat alternative" option. The meals are strictly vegetarian and never contain meat; it is unclear whether they ever contain seafood. The prison's regular meals are pork-free, but contain other meat products. The prison's Kosher meals are ordered from an outside supplier, double-wrapped, and offer more variety. The Kosher meals may be cold; inmates have no First Amendment right to hot Kosher meals. *Johnson v. Horn*, 150 F.3d 276, 283 (3d Cir. 1998), *overruled on other grounds by DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000).

contain no meat to be mixed with dairy products, but plaintiff refused.

### C. Assistant Health Services Administrator Po Lym

The City's final witness, Po Lym, is a registered nurse and Assistant Health Services Administrator at the Philadelphia Industrial Correctional Center ("PICC"), a facility within PPS. Previously, he worked as a registered nurse for Prison Health Services, Inc. ("PHS"), the corporation providing medical services to inmates at Pennsylvania prisons.

Mr. Lym first met plaintiff in March, 2011. Plaintiff had requested Kosher meals for medical reasons, and in response, a warden in plaintiff's cell block unit summoned Mr. Lym and a PHS nurse. Mr. Lym explained to plaintiff that an inmate cannot receive Kosher meals for medical reasons. He recommended that plaintiff communicate with the prison chaplain, so plaintiff could request Kosher meals for religious reasons.

Mr. Lym again encountered plaintiff during his June, 2011 hunger strike. Mr. Lym was responsible for monitoring plaintiff's vital signs (weight, temperature, heart rate, blood pressure, etc.) three times a day, because it is PPS policy that any inmate engaging in a hunger strike have his or her vital signs monitored regularly. *See* Def.'s Exs. C, D. With nurses' assistance, Mr. Lym monitored plaintiff's vital signs from June 3 to June 10, 2011, until plaintiff was admitted to the hospital for intravenous administration of fluids. When plaintiff was discharged from the hospital on June 10 and returned to his cell, Mr. Lym no longer monitored plaintiff's vital signs because plaintiff had started eating food again.

## II. Discussion

Plaintiff requested a TRO under Federal Rule of Civil Procedure 65. Rather than issue a TRO without notice to opposing counsel, the court held a preliminary injunction hearing at which

both sides were heard. For a preliminary injunction, a district court must consider: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005).

### A.    Reasonable Likelihood of Success on the Merits

Plaintiff, a pretrial detainee, is entitled to "at least those constitutional rights that [the Supreme Court has] held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). An institutionalized person has a right to a special diet for religious reasons under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See generally Washington v. Klem*, 497 F.3d 272, 276-86 (3d Cir. 2007) (RLUIPA); *DeHart v. Horn*, 227 F.3d 47, 50-61 (3d Cir. 2000) (First Amendment).

Under the First Amendment's Free Exercise Clause, plaintiff must show that denial of Kosher food contravenes his sincerely held religious beliefs, *Africa v. Pennsylvania*, 662 F.2d 1025, 1030 (3d Cir. 1981), and that the denial is not "reasonably related to legitimate penological interests." *Cooper v. Tard*, 855 F.2d 125, 129 (3d Cir. 1988). A four-factor test determines whether a prison official's decision to deny Kosher meals is reasonably related to a legitimate penological interest: (1) whether there is a rational connection between the regulation and the penological interest asserted; (2) whether an inmate has alternative means of exercising his or her rights; (3) what impact accommodation of the right will have on guards, other inmates, and the allocation of prison resources generally; and (4) whether alternative methods for accommodation exist at *de minimis* cost to the penological interest asserted. *Turner v. Safley*, 482 U.S. 78, 84

(1987).

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). RLUIPA creates strict scrutiny over governmental burdens on religious exercise. *See Klem*, 497 F.3d at 277. If plaintiff "produces prima facie evidence to support a claim alleging a [RLUIPA] violation . . . the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." *Id.* § 2000cc-2(b). "[G]overnment" includes any official of a "State, county, municipality, or other governmental entity created under the authority of a State," as well as any other person "acting under color of State law." *Id.* § 2000cc-5(4)(A). A "substantial burden" under RLUIPA:

> exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Klem*, 497 F.3d at 281. RLUIPA does not permit a court to determine whether the belief or practice in question is "compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(a); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). RLUIPA does permit inquiry into the sincerity of a prisoner's religious beliefs. *Cutter*, 544 U.S. at 725 n.13.

To have a reasonable likelihood of success on the merits under either the First

8

Amendment or RLUIPA, plaintiff must establish the sincerity of his religious beliefs. Considering the testimony of plaintiff, Chaplain Taylor, and Assistant Health Services Administrator Lym, it is clear that plaintiff does not hold a sincere religious belief in the Jewish religion.

Plaintiff's testimony that he is of the Jewish faith is not credible. Plaintiff originally informed the court, in his January 21, 2011 complaint and his June 2, 2011 letter, that he was Muslim. At the June 28, 2011 hearing, plaintiff contradicted his earlier statement and stated that he has always been Jewish; he stated he had been raised Jewish. Plaintiff offered no explanation for the contradiction. In the Rhode Island cases previously brought by plaintiff, he represented that he was Muslim, not Jewish. Plaintiff's prison wristband also states he is Muslim, and plaintiff never requested that the wristband be changed. Plaintiff was unable to explain how he observes Jewish holidays, and could not describe what makes certain foods Kosher or the significance of Kosher food to the Jewish religion. Finally, plaintiff could not recall the names of the synagogues he previously attended or the names of his rabbis or instructors in the Jewish religion.

Plaintiff's conduct while an inmate at PPS also suggests he does not hold a sincere religious belief in Judaism. During Passover, when the rules regarding provision of Kosher meals at the prison were relaxed, Chaplain Taylor testified that plaintiff did not request Kosher food; plaintiff did not dispute this testimony. Chaplain Taylor also testified that plaintiff never requested Jewish literature and did not participate in prayer. Finally, Chaplain Taylor and Assistant Health Services Administrator Lym each credibly testified that plaintiff told them that he wished to eat Kosher food for medical, not religious, reasons.

It is possible that, regardless of an inmate's past practices, an inmate can find religion during incarceration, but here, plaintiff's lack of credibility makes it highly unlikely that he converted to Judaism while in prison.  Plaintiff simply prefers Kosher food and will do whatever is required to obtain it.  Because plaintiff does not hold a sincere religious belief in the Jewish religion, the prison's decision to deny him Kosher meals does not violate the First Amendment or RLUIPA.

Even if plaintiff does have a sincere religious belief in either the Jewish or Muslim religion, current prison policy will accommodate his religious beliefs.  *See Muslim v. Frame*, 854 F. Supp. 1215, 1224 (E.D. Pa. 1994) (Pollak, J.) (recognizing a Muslim inmate's First Amendment right to a pork-free diet, but concluding that the prison did not violate inmate's right by providing him with pork-free rather than Kosher meals).  Chaplain Taylor credibly testified that the prison's regular meals are pork-free; she also offered plaintiff a strictly vegetarian diet.  Counsel for the City stated that the prison will continue to offer plaintiff a vegetarian diet.

### III.   Conclusion

For the reasons stated above, the court denies plaintiff's request for a TRO.  An appropriate order follows.